**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Frances Suzanne Devico

**(b)** County of Residence of First Listed Plaintiff  Cape May
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Rhonda E. Greenblatt Esq.
202 New Rd, Ste. 302
Linwood, NJ 08221  (609) 927-9233

**DEFENDANTS** Genesis Healthcare, LLC
d/b/a Genesis Healthcare; Genesis Healthcare
d/b/a Genesis or Genesis Healthcare Inc,
144 Magnolia Drive Operations LLC d/b/a Court House
Center Nursing Center

County of Residence of First Listed Defendant  Chesterfield, any?
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

David Kinder
Lois Helming

Attorneys *(If Known)*

Unknown

John Doe I - IX (fict name)
ABC Corps 1-20 (fict name)
J.S.A

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Americans with Disabilities Act of 1990 as amended; Civil Rights

Brief description of cause:
Act 86 1991

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 500,000.00 (in excess of)

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  N/a

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  9/27/17

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

RHONDA E. GREENBLATT
ATTORNEY AT LAW
Central Park East
222 New Road, Suite 302
Linwood, NJ 08221
(609)927-9227
ATTORNEY FOR PLAINTIFF(S)

_____

Plaintiff(s)                              UNITED STATES DISTRICT COURT
                                          FOR THE DISTRICT OF NEW JERSEY
FRANCES SUZANNE DEVICO,
CASE NO.
vs.

    Defendant(s)                                CIVIL ACTION
GENESIS HEALTHCARE,LLC d/b/a/
GENESIS HEALTHCARE; GENESIS
HEALTHCARE,INC.d/b/a GENESIS or GENESIS
HEALTHCARE;144 MAGNOLIA DRIVE
OPERATIONS LLC D/B/A/ COURT HOUSE CENTER;
DAVID KINDER; LOIS HELLMIG;
JOHN DOE I through
JOHN DOE IX(fictitious names);
ABC CORPORATIONS 1-20
(fictitious names) j/s/a;              COMPLAINT AND JURY DEMAND


## NATURE OF THE ACTION

This is an action under Title I of the American with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008 ()collectively "ADA"), , Title I of the Civil Rights ACT OF 1991 and The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et. seq. ("LAD"), to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Frances Suzanne Devico, who was adversely affected by such practices. As alleged with greater particularity below, Defendants unlawfully discriminated against, failed to accommodate, failed to engage in the interactive process with Ms. Devico and unlawfully terminated Ms. Devico on the basis of her disability.

**PARTIES:**

1. Plaintiff FRANCES SUZANNE DEVICO, (hereinafter "Plaintiff") is a natural person with her domicile in the Town of Cape May Courthouse, County of Cape May, State of New Jersey.

2a. At all times relevant to this Complaint, Plaintiff was employed by defendants as a nurse at Court House Center in the Town of Cape May Court House, County of Cape May, State of New Jersey.

2b. At all relevant times, Defendant Genesis Healthcare LLC d/b/a/ Genesis HealthCare ("Genesis HealthCare")is a corporation organized and existing under the laws of the State of Delaware and is registered in New Jersey as a limited liability company that owns and manages The Court House Center,  with its principal place of business and domicile at 101 East State Street, Kennett Square, in the County of Chester, State of Pennsylvania, and has continuously been doing business in the State of New Jersey and the Town of Cape May Court House and continuously had at least 15 employees.

3. At all relevant times, Defendant Genesis Healthcare Inc. d/b/a/ Genesis or Genesis HealthCare ("Genesis HealthCare Inc.")is a corporation, that owns and manages the Court House Center and is organized and existing under the laws of the State of Delaware and is registered in New Jersey as a corporation,  with its principal place of business and domicile at 101 East State Street, Kennett Square, in the County of Chester, State of Pennsylvania, and has continuously been doing business in the State of New Jersey and the Town of Cape May Court House and continuously had at least 15 employees.

4. At all relevant times, Defendant 144 MAGNOLIA DRIVE OPERATIONS LLC D/B/A/ COURT HOUSE CENTER ("Court House Center")  is a corporation organized and existing under the laws of the State of Delaware and is registered in New Jersey as a limited liability company , with its principal place of business and domicile at 144 Magnolia Drive, Cape May Court House, New Jersey 08210 in the County of Cape May and has continuously been doing business in the State of New Jersey and the Town of Cape May Court House and continuously had at least 15 employees.

5. At all relevant times, Genesis Healthcare, Genesis Healthcare, Inc. and The Court House Center (collectively the "Genesis Defendants") have continuously been an employer engaged in an industry affecting commerce under Section  101(5) of the ADA, 42 U.S.C. 12111(5), and Section 101(7)of the ADA, 42 U.S.C., which incorporates by reference Sections. 701(g) and (b) of Title VII, 42 U.S.C. Sections 200e (g) and (h).

6. At all relevant times, the Genesis Defendants have been a covered entity under Section 101(2) of the ADA, 42 U.S.C. Section 12111(2).

7. David Kinder was and continues to be  the Administrator and Center Executive Director at the Court House Center.

8. Lois Hellmig was and continues to be, the Director of Nursing at the Court House Center.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C.§ § 1331 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a. The supplemental jurisdiction of this Court is invoked  over New Jersey State law causes of action, pursuant to 28 U.S.C.§ 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C.§ 1391 (b), because the events giving rise to the Plaintiff's claims occurred in New Jersey .

3. This Court may properly maintain personal jurisdiction over the Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over defendants to comply with traditional notions of fair play and substantial justice.

4. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")

5. On September 30, 2016, the EEOC determined that the Genesis Defendants had committed acts of discrimination against the Plaintiff.  See, Exhibit A, a copy of the EEOC's determination relating to the Defendant Genesis.

6. On September 29, 2017 the EEOC issued a Right to Sue authorizing the Plaintiff to commence an Action against the Defendant Genesis. See, Exhibit B, a copy of the Right to Sue relating to the Defendant Genesis.

7. This action is filed within 90 days of the Right to Sue Letter issued related to the Defendant Genesis.

8. Any and all prerequisite to the institution of this Action have been met.

9. In or around June 2014, Defendants engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. Section 1212, as outlined below:

**FACTS**

1. Plaintiff was employed by Genesis Healthcare ("Genesis" or "Employer") and worked at the Court House Center, which was owned by the Genesis Defendants, as a nurse until her termination on June 23, 2014.

2. Plaintiff's supervisor was Lois Helmig, Director of Nursing (the "DON").

3. David Kinder was the Administrator of The Court House Center

4. Ms. Devico had been an employee of Courthouse long before Genesis purchased the facility on or about April 14, 2014.

5. Plaintiff had been employee for Courthouse for almost ten(10) years, without having a record of any disciplinary actions, and in fact had a very favorable work record with Courthouse, and had received favorable performance reviews.

6. At the time Genesis took over, Plaintiff's salary as an LPN was $29.90 per hour and was the highest paid nurse at the facility.

7. Before Genesis took over, Plaintiff received very favorable evaluations and viewed as a good nurse.

8. Plaintiff had been provided reasonable accommodations for her disability and did her job well.

9. A little over a month after Genesis took over, Plaintiff was wrongfully and unlawfully terminated her based on a questionably performed urine test (which Ms. Devico disputes was even her urine, as discussed more fully below);

10.     The Urine test was taken on June 9, 2014 when Plaintiff was having a temporary reaction, not previously experienced, to a very recently increased dose of a blood pressure medication (Metroprol 50 mg. prescribed by Dr. Burhanna) which caused her to feel dizzy and have a dry mouth.

11.     As a result of the dizziness Ms. Devico experienced, Plaintiff went for a cardiac evaluation the very next day and her physician sent her for further medical tests.

12.     Ms. Devico provided a copy of this report to her employers as further evidence of her reaction to the blood pressure medicine.

13.     Plaintiff also once again provided copies of prescriptions for the legal medications Plaintiff takes for her disability.

14.     Plaintiff passed the illegal, allegedly non-negative urine test Defendants had done, and Defendants still used that as a basis to illegally fire her.

15.     Ms. Devico is on several legally prescribed medications, the prescriptions of which are in her employment file and have been since Plaintiff was hired.

16.     Ms. Devico has been legally using these medications for years while performing the same job for Genesis' predecessor company, Courthouse Convalescent Center ("Courthouse").

17.      Traces of these prescribed medications were apparently indicated on the drug screening test.

18.     One of the medications which Ms. Devico legally takes for her disability, Xanax, did not even show up in the urine test which was allegedly based on her urine.

19.     However, the urine test that was done was not a "guarded" urine test and Lois Hellmig, the Director of Nursing ("DON"), who administered the test at Courthouse, left the room twice with the urine, before submitting it for testing.

20.     Ms. Devico passed this non-negative test because of the legal prescriptions Plaintiff had for medications Plaintiff took for her disability, copies of which Plaintiff had previously provided to her employer.

21.     Soon thereafter, Ms. Devico obtained, at her own expense a second guarded drug screening done at Quest Diagnostics, which Plaintiff passed.

22.    That test correctly showed the presence of Xanax, which the Genesis test did not, further suggesting that the urine that was improperly tested did not belong to Ms. Devico at all, because if it had been hers, it would have showed the presence of Xanax, for which Plaintiff had a prescription.

23.    Moreover, the Genesis illegal urine test showed the presence of Ativan, which was not even on Ms. Devico's medication cart and is a medication Plaintiff does not take.

24.    Defendants never provided to Plaintiff any policies pertaining to ensure equal employment opportunities, harassment policies , problem resolution procedures, or even an employee handbook.

25.    Although Defendants made the employees, including Ms. Devico, acknowledge on a computer that they received the hand book and policies, as a condition of getting onto the Genesis Payroll, they never provided to Ms. Devico a copy of the actual handbook and policies and problem resolution process or of any procedures for reporting or investigating discrimination claims.

26.    There were no posted signs at the time to notify employees of these policies.

27.    On 6/23/2014 Plaintiff was discharged as a result of the aforementioned illegal urine test, done for medications Plaintiff had taken due to her disability, of which her employer was aware, and had been included in her employment file.

28.    The illegal urine test was administered at  her job on 6/9/2014, at the direction of the DON as a result of her aforementioned dizziness due to the newly  increased dosage of Metoprolol (blood pressure medication) Plaintiff had taken the night before.

29.     Plaintiff's doctor had given her a prescription for that medication and had just recently increased her dose.

30.     The urine test that was done tested Plaintiff for medications for which Plaintiff had prescriptions, due to her disability, and of which the Employer was aware.

31.     Plaintiff was wrongfully terminated as a result of a positive test for these legal medications for which Plaintiff had been given a prescription by her treating physician, for her disability.

32.     These medications do not interfere with her ability to do her job.

33.     Plaintiff takes them at night when not working.

34.     The urine test given to Plaintiff was not a typical random drug test done to screen for illegal drugs.

35.     Instead, it was done, as previously stated, to test her for legal medications which Plaintiff takes for her disability (when not at work) and which Defendants were aware.

36.     The DON wrongfully accused Ms. Devico of being under the influence of narcotics as the cause of her dizziness.

37.     Plaintiff's dizziness was caused by an increased dose of her blood pressure medication, Metroprolol, which she takes take for her high blood pressure.  Plaintiff's employer has been fully aware of these prescribed medications.

38.     Plaintiff is disabled due to chronic pain, scoliosis spondylosis, hardware in her body from C6-T1,high blood pressure and Plaintiff is a former Cancer patient. Plaintiff wears a back brace.

39.     Due to Plaintiff's chronic pain, Plaintiff had previously taken Oxycodone at night, when not at work.

40.     This medication has been prescribed by her doctor. Plaintiff can no longer take this medication and takes Lyrica instead.

41.     Plaintiff had previously provided her employer with her medical records and prescription information.

42.     Before Genesis became Plaintiff's employer, her former Director of Nursing had recognized that Plaintiff was a good nurse and accommodated her.

43.     When Genesis became the new owner, shortly before Plaintiff was fired, Ms. Devico was told she was being set up so she could be fired.

44. Now the people at Genesis have told her present employer that Plaintiff was intoxicated, which is not true.

45. On the date in question, Plaintiff's symptoms had been due to a bad reaction to an increased dose of legally prescribed blood pressure medication.

46. Instead of calling 911 to get Ms. Devico help for her dizziness, which was caused by too low blood pressure, her employer used it as an opportunity to do an illegal urine test to test for medications(which Ms. Devico had been legally prescribed for her disability) so that they could wrongfully terminate her.

47. Plaintiff's disability was the motivating factor for Defendant's wrongful termination of her employment as a Nurse with Genesis Healthcare

48. Both Louis Hellmig, the Director of Nursing and David Kinder, the Administrator worked with Ms. Devico before, when Plaintiff was a nurse at North Cape and Victoria Manor, both owned by Genesis.

49. Ms. Devico successfully maintained a workers' compensation action against Genesis in 1990, based on neck injuries Plaintiff suffered while working for them.

50. Plaintiff received a permanency award from Genesis.

51. Both Ms. Helmig and Mr. Kendar remembered Ms. Devico when Genesis took over Courthouse.

52. In fact, when Ms. Helmig would call Ms. Devico to relay messages to other staff, Plaintiff would frequently say to her "you will never remember" and hang up the phone on her.

53. Ms. Devico had provided her medical records and copies of her prescriptions when Plaintiff was first hired by Courthouse, which were included in the employee records left in a box by Gloria Brereton for Genesis when they took over.

54.     Ms. Devico later found out that these employee records were *removed and destroyed* at the direction of Lois Hellmig, after Ms. Devico was terminated.

55.     In fact, all of the remaining employees had to go to Cape Urgent Care to get new physicals and urine test afterwards.

56.     That may explain why Defendants now claims that they have no records containing any of the medical information and prescriptions previously provided to Courthouse by Ms. Devico.

57.     If the (nonguarded) urine tested by Defendants was really Ms. Devico's urine, it would have contained Xanax, a prescription that Plaintiff legally takes.

58.     Xanax did not show up in that drug screening, but did in the second independent guarded drug screening test taken by Ms. Devico at Quest.

59.     Ms. Devico passed both tests since Plaintiff had legal prescriptions for the medications that showed up, which Plaintiff takes for her disability.

60.     Rick in HR, who had been present at the aforementioned urine test, also stated that the test was not done legally.

61.     When Ms. Devico was experiencing the dizziness and dry mouth from the increased dose of Metoprolol and asked for her blood pressure to be taken and either her husband or 911 be called, Ms. Helmig, the DON, specifically said to her that Metoprolol doesn't cause doesn't cause dizziness and that Plaintiff was intoxicated and under the influence of narcotics.

62.     Defendants' allegation that Ms. Devico was intoxicated, slurring her speech, moving slowly and unsteadily and under the influence of narcotics is simply untrue and Plaintiff was very dizzy.

63.     This was an isolated incident, and Ms. Devico has since switched blood pressure medications, a reasonable accommodation for her disability which Genesis was legally obligated  to provide.

64.     In light of her sudden bad reaction to *the increased dose of her blood pressure medication*, Ms. Devico did

everything she could to keep her patients out of harms' way and do her job, by immediately locking up her medical cart and calling the DON for help, and waiting for another nurse to take over for her, since Plaintiff was the only nurse on the floor.

65.    Ms. Devico asked that either her husband or 911 be called and asked that her high blood pressure be taken.

66.    Defendants never took her blood pressure.

67.    However, Plaintiff did attempt to call the DON for help, since Plaintiff could not leave her floor and her patients until another nurse came to take over for her.

68.    Plaintiff was the only nurse on the floor.

69.    Instead of getting help for Ms. Devico, Plaintiff was asked to go to the DON's office and given the illegal urine test.

70.    This is in spite of the fact that Ms. Devico explained to them that she was having a reaction to the blood pressure medication and needed medical attention. All they had to do was to take her blood pressure to confirm what Ms. Devico was saying, and they would have seen blood pressure was too low.

71.    However, they took it as an opportunity to set her up to be fired, and instead did the illegal, non-guarded urine test.

72.    It is questionable as to whether the urine was really plaintiff's, because if it was, one of the medications she was legally on for her disability, Xanax, would have showed up on the test results.

73.    It did not.

74.    Instead, Ativan did, which was not even on her medication cart.

75.    The illegal urine test did not prove Plaintiff was intoxicated.

76.    If anything, the test was done to test for her legal medications which Plaintiff legally took for her disability, which her employer was fully aware of.

77.    Plaintiff was not behaving in a way that would show she was intoxicated.

78.    Instead, Plaintiff was exhibiting signs of very low blood pressure and a bad reaction to the blood pressure medication evidenced by the dizziness and dry mouth.

79.    If Defendants had called 911, like Ms. Devico had requested, Plaintiff could have had a guarded legal urine test at the hospital.

80.    Instead Defendants chose to do it illegally *and* unguarded.

81.    Ms. Hellmig left the room twice with the urine once she had it, but is unclear why.

82.     There is no proof that the urine that had been submitted for testing was actually Ms. Devico's , or that it had not been tampered with.

83.     Ms. Devico had a second guarded urine test done at an independent facility, which she passed.

84.     Plaintiff had passed every urine test she has had since then, without a problem.

85.   Any legally prescribed medications which Plaintiff takes for her disability, and might show up in a urine test, had been disclosed to her employer previously.

86.     Some medications, such as Xanax can show up on a urine test for a month after it was taken.

87.     Genesis knew   Ms. Devico had a disability, since Plaintiff had maintained a successful workers compensation action and obtained a permanency award against Genesis in 1990.

88.   Other people, including Ms. Devico's present employer, have wrongfully been told that she was intoxicated.

89.     When Ms. Devico was in her bank depositing her pay check, one of the bank tellers, whose daughter is a supervisor at another Genesis owned facility, asked her if she was still working as a nurse and said her daughter told her (who had never even met Ms. Devico) that they were going to try to go after her license.

90.   Genesis is well aware that Ms. Devico is disabled, but Plaintiff is fully capable of doing her job.

91.     Defendants illegally fired Plaintiff, who had been one of the highest paid nurses at the facility, and   risk ruining her ability to work somewhere else by talking to outsiders about what was   the subject matter of an EEOC investigation.

92.   Valerie Simuli, an assistant, was a witness   when Ms. Devico suffered the reaction to the blood pressure medication and saw that she was dizzy and vomited and unable to finish her duties with respect to the medication cart.

93.   Ms. Devico also had a headache from the reaction Valerie went to get help for Ms. Devico. Valerie and nurse Patel from 3B also advised her to go home and that they were aware that Ms. Devico was going to be set up so that she could be fired.

94.   In all the years Ms. Devico has been employed as a nurse, there had never been any previous documentation about any prior alleged violations of gross negligence, misconduct, policy violations, medical documentation errors, being under the influence of narcotics while at work or not allegedly disclosing her need for prescription narcotics while at work (which Plaintiff takes at night, but *not* while at work, and would *never* taken any

medication, narcotics or otherwise, which would affect her ability to perform the essential functions of her job).

95.     Defendants repeatedly allege, incorrectly, that Ms. Devico was under the influence of narcotics while at work.

96.      As set forth previously, Ms. Devico suffered a bad reaction t a recently increased dose of blood pressure medication.

97.     This evidenced by her medical records from both before and after the incident.

98.     Plaintiff was not intoxicated nor under the influence of narcotics.

99.     Plaintiff did take a legally prescribed pain medication at night, while not at work, if/when needed it, but this medication only had a 4½ hour half-life so would not have affected her at work.

100.     Still, Plaintiff had advised her employer of this medication.

101.     Although Ms. Devico provided her employer with her medical information and all of the prescriptions which she took, she would not have been required to disclose her need to take prescription narcotics while at work, because she did not need  to take narcotics at work and would not take any medications that would impair her ability to perform the essential functions of her job effectively.

102.     Plaintiff did discuss her medications with her employer.

103.     Plaintiff had provided those records.

104.     Defendants failed to engage in the interactive process with the Plaintiff, failed to provide any reasonable accommodations to her and  instead unlawfully terminated her.

105.     Ms. Devico is not responsible if they chose to destroy those records after they terminated her.

106.     Plaintiff she complied with any policy regarding narcotics prescriptions, even though she was never provided with a copy of the handbook in which the policy appears.

107.     As previously discussed, Ms. Devico did not come to work knowingly under the influence of drug(s)that could hinder her job performance, and therefore, could put residents in harm's way.

108. Plaintiff specifically did not take narcotics while at work and would not knowingly take any medication that would interfere with her ability to do her job or jeopardize the safety of her patients.

109. The incident on June 9, 2014 was a completely isolated incident in which Ms. Devico suffered and unexpected bad reaction to an increased dose of blood pressure medication she had previously taken with no problems, when it was at the previously lower dose.

110. When she saw she was suffering a bad reaction to the increased dose while at work, and becoming dizzy, Plaintiff did what she could to keep her patients safe-she locked up her medication cart, attempted to call the DON for help and waited for another nurse to come relieve her.

111. The American with Disability Act ("ADA"), and other laws, protects individuals who have been wrongfully terminated as a result of a positive test result for legal medication for which they have been given a prescription by their treating physician, especially where the medications do not interfere with her ability to perform her job.

112. Ms. Devico has been legally using these medications for years while performing the same job for Genesis' predecessor company, Courthouse Convalescent Center.

113. Defendants fired Plaintiff not because of what they inaccurately state Plaintiff did wrong, but because of her disability.

114. The effect of the unlawful practices complained of above has been to deprive Plaintiff of her employment at Defendants' facility, as well as income and benefits related there to, as well as harming her reputation, all because of her disability.

115. The unlawful employment practices complained of above were intentional.

116. The unlawful employment practices above were done with malice or with reckless indifference to the federally protected rights of Ms. Devico.

117. The effect of the unlawful practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon the Plaintiff by depriving her of her rights, in violation of the ADA.

118. The Genesis Defendants and the Court House Center

119. should be collectively be deemed Plaintiff's employer under the "single employer" doctrine and/or "joint employer" doctrine. Upon information and belief, the Genesis defendants exercise significant control over the daily operations of Defendant Court House Center. Further, upon information and belief, Defendants together exercised control over the terms and conditions of the Plaintiff's employment.

120. At all times relevant hereto, Defendants were acting through their agents, servants, and employees, who were

acting within the scope of their authority, course of employment, and under the direct control of the defendants.

121.    At all times material herein, the Defendants have been a "person" and "employer" as defined under the ADA and the NJLAD, and have been and are, subject to the provisions of each said Act.

122.    In or about June of 2014, Defendants, through their agents, servants and employees, including, but not limited to David Kinder and Louis Hellmig, began subjecting Plaintiff to discrimination based on her disability.

.

## COUNT I
## Violations of the ADA
## (Disability/Perceived Disability)

1. The foregoing paragraphs are incorporated herein as set forth in full.

2. Plaintiff's aforementioned medical and physical  conditions rendered her an individual with a disability under the ADA.

3. Plaintiff was perceived by Defendants to be suffering from a disability under the ADA and had a record of said disability.

4. Defendants fired Plaintiff because of his actual/perceived disability.

5. Said action constitute a violation of the ADA, and has caused Plaintiff to suffer damages.

## COUNT II
## Violations of the ADA
## (Failure to Accommodate)

1. The foregoing paragraphs are incorporated herein as set forth in full.

1. Plaintiff requested a reasonable accommodation from Defendants in that he sought to be permitted.

2. Defendants could have granted the requested accommodation without undue hardship but failed to do so.

3. Defendants failure to provide such an accommodation constituted a violation of ADA

4. Defendants further violated the ADA by not engaging <u>in a good faith</u> interactive process with Plaintiff in connection with an accommodation that Defendants had been informed that Plaintiff would be requiring.

**COUNT III**
**<u>Violations of the ADA</u>**
**<u>(Retaliation)</u>**

1. The foregoing paragraph are incorporated herein as if set forth in full.

2. Requesting an accommodation for a disability and accepting the accommodation are clearly protected activities under the ADA.

3. Defendants' termination of Plaintiff in retaliation for his requesting an accommodation constitutes a violation of the ADA.

4. There was a causal connection between Plaintiff's known need for an accommodation due to her disability and her termination.

5. As a result, Plaintiff has suffered damages.

**COUNT IV**
**<u>Violations of the NJLAD</u>**
**<u>(Disability/Perceived Disability)</u>**

1. The foregoing paragraphs are incorporated herein as if set forth in full.

2. The Plaintiff's aforementioned medical conditions rendered her an individual with a disability under the NJLAD.

3. Plaintiff was perceived by Defendants to be suffering from a disability under the NJLAD.

4. At all times relevant herein, Plaintiff was employed by defendants as an "employee" within the meaning of the NJLAD.

5. Defendants fired Plaintiff because of her actual/perceived disability.
6. By and through the aforementioned conduct, defendants discriminated against plaintiff on the basis of her disability in violation of NJLAD.

7. Said action constitutes a violation of the NJLAD, and has caused Plaintiff to suffer damages.

## COUNT V
## Violations of the NJLAD
### (Failure to Accommodate)

1. The foregoing paragraphs are incorporated herein as set forth in full.
2. Plaintiff has a disability, as defined by the ADA.
3. Defendants knew about Plaintiff's disability.
4. Plaintiff requested accommodations and/or assistance  for her disability.

5. Plaintiff is a "qualified individual" able to perform the essential functions of her job as a nurse.
6. Defendants were informed of the need for an accommodation of Plaintiff due to a disability.
7. Defendants did not make a good faith effort to assist the Plaintiff in seeking accommodations

8. Providing the accommodation, including, but not limited to, allowing her to make adjustments to the blood pressure medication that had made her dizzy, would have been reasonable, meaning that the costs of that accommodation would not have clearly exceeded its benefits.

9. Defendants could have granted the requested accommodation without undue hardship but failed to do so .
10.    The Plaintiff could have been reasonably accommodated but for the employers lack of good faith.

11.    Defendants failure to provide such an accommodation constituted  a violation of NJLAD.

12.    Defendants further violated the NJLAD by not engaging in a good faith interactive process with Plaintiff after defendants were informed of the need for an accommodation or Plaintiff due to a disability.

## COUNT VI
## Violation of the NJLAD
### (Retaliation)

1. The foregoing paragraphs are incorporated herein as if set forth in full.

2. Requesting an accommodation for a disability and accepting the accommodation are clearly protected activities under the NJLAD.

3. Defendants' termination of Plaintiff in retaliation for her requesting an accommodation constitutes a violation of the NJLAD.

4. The plaintiff was subject to the retaliation at the time , or after the protected conduct took place.

5. There was a causal connection between the termination and plaintiff's protected conduct.

6. As a result, Plaintiff has suffered damages.


**COUNT VII**
**Violation of the ADA**
                  **(Harassment/ Hostile Work Environment Based**
**Upon Her Disability/ Perceived Disability)   )**

1. The foregoing paragraphs are incorporated herein as set forth in full.

2. Plaintiff was subjected to harassment by Lois Hellmig and David Kinder, which was motivated by Plaintiff's known disability and/or request for accommodation.

3. Plaintiff was subjected to false accusations, including, but not limited to,  that she was "intoxicated" and subjected to an illegal urine test for medications which had legally been prescribed to her for her disability.

4. Plaintiff suspects that the urine that had been used for the test may not even have been hers, or had been tampered with.

5. This illegal urine test was administered by Lois Hellmig and other employees of the defendants.

6. This conduct was not welcomed by the Plaintiff.

7. The conduct was motivated by the fact that plaintiff has a disability as defined by the ADA and/or sought an accommodation for that disability.

8. The conduct was so severe or pervasive that a reasonable person would find Plaintiff's work environment  to ne hostile or abusive.

9. Plaintiff believed her work environment to be hostile or abusive as a result of the conduct of Lois Hellmig and other employees of the defendants.

10.     Plaintiff suffered an adverse tangible employment action when she was fired from her job as a nurse , as a result of the hostile work environment.

11.     Management level employees, knew or should have known, of the abusive conduct, since management was not only aware of Plaintiff's disability, but also participated in the harassment.

## COUNT VIII
### Violation of the NJLAD
### (Individual Liability/Aiding and Abetting)

1. The foregoing paragraphs are incorporated herein as set forth in full.
2. Defendant Lois Hellmig was the Director of Nursing at the Court House Center, an employee of the defendants and one of Plaintiff's supervisors during all relevant times referred to herein.
3. Defendant Hellmig made the decision and/or participated in the decision to terminate the Plaintiff in connection with her disability and known need for accommodations.
4. Defendant Hellmig discriminated and/or retaliated against Plaintiff based upon her disability and/or perceived disability in violation of the LAD. Defendant Hellmig is liable under the LAD for aiding and abetting the discriminatory and retaliatory conduct of plaintiff's employer under N.J.S.A. 10:5-12(e).
5. Defendant Hellmig made the decision and /or participated in the decision to terminate the plaintiff based upon her disability/perceived disability/known need for an accommodation due to her disability.
6. Defendant Hellmig interfered with plaintiff's exercise and enjoyment of her rights under the NJLAD.
7. Defendant is therefore individually liable to the plaintiff for her violation of the NJLAD.
8. As a result of the foregoing conduct by defendant, plaintiff has suffered and will continue to suffer injury and damage to her personal and professional reputation, emotional distress resulting in physical manifestations of injury, humiliation, stress, the loss of past, present and future earnings and benefits.
9. The conduct of the defendant was egregious and outrageous with actual malice and/or was willful and wanton with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such acts to plaintiff sufficient to give rise to a claim for punitive damages.

### COUNT IX
### Violation of the NJLAD

**(Individual Liability/Aiding and Abetting)**

1. The foregoing paragraphs are incorporated herein as set forth in full.
2. Defendant David Kinder was the Administrator at the Court House Center, an employee of the defendants and one of Plaintiff's supervisors during all relevant times referred to herein.
3. Defendant Kinder made the decision and/or participated in the decision to terminate the Plaintiff in connection with her disability and known need for accommodations.
4. Defendant Kinder discriminated and/or retaliated against Plaintiff based upon her disability and/or perceived disability in violation of the LAD. Defendant Hellmig is liable under the LAD for aiding and abetting the discriminatory and retaliatory conduct of plaintiff's employer under N.J.S.A. 10:5-12(e).
5. Defendant Kinder made the decision and /or participated in the decision to terminate the plaintiff based upon her disability/perceived disability/known need for an accommodation due to her disability.
6. Defendant Kinder interfered with plaintiff's exercise and enjoyment of her rights under the NJLAD Defendant is therefore individually liable to the plaintiff for her violation of the NJLAD.


7. Defendant Kinder made the decision and /or participated in the decision to terminate the plaintiff based upon her disability/perceived disability/known need for an accommodation due to her disability.

8. As a result of the foregoing conduct by defendant, plaintiff has suffered and will continue to suffer injury and damage to her personal and professional reputation, emotional distress resulting in physical manifestations of injury, humiliation, stress, the loss of past, present and future earnings and benefits.
9. The conduct of the defendant was egregious and outrageous with actual malice and/or was willful and wanton with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such acts to plaintiff sufficient to give rise to a claim for punitive damages.


**COUNT X**
**Defamation**

1. The foregoing paragraphs are incorporated herein as set forth in full.

2. The aforementioned wrongful conduct by defendants included publishing defamatory statements, verbally and in writing, and constituted libel and slander.

3.     The defendants' wrongful allegations regarding plaintiff's alleged "intoxication", was "under the influence or narcotics and other incorrect statements constituted defamatory statements.

4. These defamatory statements concerned the plaintiff.

5. These defamatory statements were false.

6. These defamatory statements were communicated to someone other than the plaintiff.

7.     Said defamatory statements injured the reputation of the plaintiff.

8.     Said defamatory statements caused the plaintiff to lose the goodwill/confidence of others.

9.     Said defamatory statements injured and continue to injury the plaintiff in her profession as a nurse , and in related positions.

10.     Said defamatory statements would be understood by a reasonable person to be defamatory.

11.     Said defamatory statements concerned the plaintiff.

12.     Said defamatory statements were false.

13.     Said defamatory statement were communicated orally and/or in writing to someone other than the plaintiff.

14.      Defendants communicated and published the defamatory statements to other parties knowing and should have known the defamatory statements to be false.

15.      Defendants communicated and published the defamatory statements with a high degree of awareness and probability that they were false.

16.      Defendants negligently communicated and published the defamatory statements in failing to determine the falsity of the statement before they did so.

17.      Defendants exceeded the limits of any qualified privilege by communicating and publishing said defamatory statements, because said defamatory statements were made in connection with the aforementioned unlawful employment practices of the Defendants.

18.      Said defamatory statements were not made in good faith in that defendants ignored plaintiff's statements that said allegations were false and ignored the medical records she supplied to them, as well as the pertinent medical and prescription information previously supplied to her employers, and contained in her employment file.

19.    16.    Said defamatory statements made by defendants were primarily motivated by malicious intent in connection with their aforementioned unlawful employment practices..

20.    Said defamatory statements made by defendant were made
when they knew said statements were false and/or defendants
acted in reckless disregard of their truth or falsity.


### COUNT XI


1.    Plaintiff repeats the allegations of the first eleven
Counts as if set forth fully herein

2.    Defendants, John Doe I through John Doe IV and ABC
Corporations 1-20, are unknown persons, partnerships, corporations,
or other business entities which employed Plaintiff at the time of
the incidents described above.

3. Defendants, John Doe I through John Doe IV and ABC
Corporations 1-20, are unknown persons, partnerships, corporations,
or other business entities which participated and /or were
responsible for or complacent of any conduct that constituted
and/or  may have been construed as discrimination or participated
in plaintiff's wrongful termination.

4. as a result of the foregoing conduct by defendants ABC
Corporations 1-20, plaintiff was forced to leave her employment
with defendants in violation of the ADFA and or the NJLAD.

5. Plaintiff has suffered and will continue to suffer injury
and damages to her personal and professional reputation, emotional
distress   resulting   in   physical   manifestation   of   injury,

humiliation, stress, the loss of past, present and future earnings and benefits, as a direct result of the aforementioned conduct by defendants.

6.  Although plaintiffs have made a diligent inquiry, the actual identity of the defendants, John Doe I through John Doe IV and ABC Corporations 1-20, are unknown to the plaintiffs, and accordingly are designated by fictitious names.   The plaintiff reserves the right to amend the within Complaint when the actual identity of said fictitiously named defendants become known.

7.  Defendant  John  Does  1-9  are  fictitious  names  for individuals who participated  and /or were responsible for any conduct that constituted  and/or may have been construed as discrimination   or  participated  in  plaintiff's  wrongful termination.

8. As a result of the aforementioned conduct by John Does 1-9, plaintiff was forced to leave her employment with defendants in violation of the ADA and/or the NJLAD.

9. Plaintiff has suffered and will continue to suffer injury and damages to her personal and professional reputation, emotional distress  resulting  in  physical  manifestation  of  injury, humiliation, stress, the loss of past, present and future earnings and benefits, as a direct result of the aforementioned conduct by defendants.

10. Defendants, John Doe I and John Doe II, were the owners and operators of GENESIS HEALTHCARE,LLC d/b/a/ GENESIS HEALTHCARE; GENESIS HEALTHCARE,INC.d/b/a GENESIS or Genesis HealthCare;144 MAGNOLIA DRIVE OPERATIONS LLC D/B/A/ COURT HOUSE CENTER; and ABC Corporations 1-20 jointly, severally and in the alternative and were the employers of plaintiff, at all times pertinent to the within Complaint.

11. Defendants, John Doe III, John Doe IV, John Doe V, and John Doe VI were other agents, servants and employees and upper managers of the defendants, responsible for creating, implementing, and/or carrying out the discrimination and the malicious , extreme and outrageous conduct, and other wrongful conduct toward plaintiff as aforementioned.

12. Defendants, John Doe III, John Doe IV, John Doe V, and John Doe VI were other independent contractors or employees of independent contractors of the defendants, responsible for creating, implementing, and/or carrying out the discriminatory and malicious and extreme and outrageous conduct, and other wrongful conduct toward plaintiff as aforementioned.

13. Defendants, David Kinder, Lois Hellmig , and John Doe I and John Doe II, are responsible for the wrongful and discriminatory conduct on the part of defendants, GENESIS HEALTHCARE,LLC d/b/a/ GENESIS HEALTHCARE; GENESIS HEALTHCARE,INC.d/b/a GENESIS or Genesis HealthCare;144 MAGNOLIA DRIVE OPERATIONS LLC D/B/A/ COURT HOUSE CENTER, , John Doe III through John Doe VI, under the theory of respondeat superior, ratification, and negligent hiring, training, disciplining and supervision.

14. Defendants David Kinder , Lois Hellmig and John Doe I through John VIII intentionally agreed and conspired with the one another in Plaintiff's Rights under the ADA and the NJLAD and are therefore individually liable to plaintiff.

15. Defendants John Doe I through John Doe VI violated plaintiff's rights under the ADA and the NJLAD and regulations

promulgated thereunder, and committed other wrongful conduct toward plaintiff as is more particularly set forth in the preceding Counts of this Complaint as to the specifically named defendants, which directly and proximately caused the injuries, damages and losses to plaintiff as aforementioned.

16.   John Doe VII, John Doe VIII and John Doe IX are other persons or entities liable to plaintiff for her injuries, damages and losses, under any theory of liability and cause of action whatsoever.

WHEREFORE, the Plaintiff demands judgment against the Defendants **GENESIS HEALTHCARE,LLC d/b/a GENESIS HEALTHCARE; GENESIS HEALTHCARE,INC.d/b/a GENESIS or Genesis HealthCare;144 MAGNOLIA DRIVE OPERATIONS LLC d/b/a COURT HOUSE CENTER;David Kinder; Lois Hellmig; John Doe I through John Doe VIII and ABC Corporations 1-20, jointly, severally and in the alternative,** as follows:

A. Demand a jury trial on these issues to determine liability and damages;

B.  A judgment declaring that the practices complained of herein are unlawful;

C.  All damages, including without limitation liquidated damages, which Plaintiff has sustained as a result of the Defendants' conduct including back pay, front pay, general and special damages for lost compensation and job benefits she would have received but for Defendant' s improper practices together with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of  Defendants' illegal actions;

D. All damages which the Plaintiff has sustained as a result of Defendant's conduct, including general and special damages for job

benefits he would have receive but for the Defendant's improper practices;

E. An award to Plaintiff of compensatory damages, including but not limited to damages for emotional pain, physical pain, and suffering where appropriate;

F. Awarding the Plaintiff compensatory damages including but not limited to damages for pain and suffering, humiliation, embarrassment, and damage to reputation, character and standing within the community;

I. Defendants are to compensate Plaintiff to make Plaintiff whole by providing compensation for past nonpecuniary losses resulting from the aforementioned unlawful employment practices, including, but not limited to emotional pain, suffering, inconvenience, humiliation, and embarrassment in amounts to be determined at trial.

J.  Defendants are to compensate Plaintiff to make Plaintiff whole by providing compensation for future nonpecuniary losses resulting from Defendants' aforementioned unlawful employment practices, in an amount to be determined at trial.

K. Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its malicious, reckless and willful conduct, as described above;

M. Awarding Plaintiff costs and disbursements incurred in connection with the Action, together with interest at the statutory rate;

N.  Awarding the Plaintiff reasonable attorneys' fees, expert witness fees, and  other costs and expenses;

O.  Pre-judgment and post-judgment interest, as provided by law; and

P. Granting the Plaintiff other and further relief as this Court finds necessary and proper.

s/Rhonda E. Greenblatt, Esq.
RHONDA E. GREENBLATT, ESQUIRE
Attorney for Plaintiff
222 New Road, Suite 302
Linwood, NJ 08221
(609) 927-9231 (Phone)
(609) 927-9233 (Fax)

Dated: 9\27\17

JURY DEMAND

Plaintiff demands a trial by jury of all issues and claims in this Action.

CERTIFICATION

I am an attorney admitted to practice law in the State of New Jersey, counsel for the above-named Plaintiffs.  The matter in controversy in this case is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  There are no other parties who should be joined in this action, except for specifically designating those Defendants presently designated by fictitious names.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

s/ Rhonda E. Greenblatt, Esq.
RHONDA E. GREENBLATT
Attorney for Plaintiff

9/27/17

TAKE NOTICE that the undersigned attorney, counsel for these Plaintiffs, does hereby demand, that each party herein serving pleadings, interrogatories and Notices to Produce Documents and receiving answers thereto, serve copies of all such pleadings, and provide answered interrogatories received from any party, including any documents, papers, and other materials referred to therein, upon the undersigned attorney, and TAKE NOTICE that this is a continuing demand.

s/ Rhonda E. Greenblatt, Esq.
RHONDA E. GREENBLATT
Attorney for Plaintiff

9/27/17

TAKE NOTICE that the under signed attorney, counsel for plaintiff, does hereby demand, answers to all applicable Form interrogatories prescribed by the Court Rules, and the annexed Interrogatories.
TAKE NOTICE that the undersigned, attorney, counsel for plaintiff, does hereby demand responses to the Notice to Produce Documents annexed to the within Complaint, as Exhibit A, within the time limits prescribed by the Rules of the Court.

s/ Rhonda E. Greenblatt, Esq.
RHONDA E. GREENBLATT
Attorney for Plaintiff
222 New Road, Suite 302
Linwood, NJ 08221
(609) 927-9231 (Phone)
(609) 927-9233 (Fax)

Date: 9/27/17

VERIFICATION

I hereby verify that the statements contained in this Complaint are true and correct to the best of my knowledge, information and belief.

Date: September 25, 2017

Frances Suzanne Devico

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

Charge Number: 530-2015-01207

Frances Devico
8 Lomurno Lane
Cape May Court House, NJ 08210

Charging Party

v.

GENESIS HEALTH CARE, LLC
101 E State Street
Kennett Square, PA 19348

Respondent

## LETTER OF DETERMINATION

Under the authority vested in me by the Equal Employment Opportunity Commission ("the Commission" or "the EEOC"), I issue the following determination as to the merits of the above cited charge filed under the Americans with Disabilities Act of 1990, as amended ("ADA"). The timeliness and all other jurisdictional requirements for coverage have been met.

Charging Party alleges Respondent discriminated against her because of her disability when it failed to engage in the interactive process to accommodate her disability and discharged her for the same. Charging Party provided her previous employer with medical documentation and prescription information regarding her disability. Charging Party alleges that on or about May 14, 2014 after Respondent acquired Charging Party's previous employer, Respondent received her medical file and should have been aware of her disability.

Respondent denies Charging Party's allegations and maintains that she was discharged for gross negligence, misconduct, and violating Respondent's Medication Administration Policy and Substance Free Policy. Respondent further maintains that it was unaware of Charging Party's disability until after her policy violations.

The record shows that on or about at least June 10, 2014, Respondent was aware of Charging Party's disabilities and need to take prescribed medication. A review of the evidence reveals that Charging Party's violations resulted from her need to accommodate her disability. Rather than attempt to provide her with a reasonable accommodation that would have allowed her to

"A"

satisfactorily perform the essential functions of her position, Respondent failed to engage in the interactive process with the Charging Party, and discharged her on July 2, 2014.

Based on the evidence obtained during the Commission's investigation, I have determined that there is reasonable cause to believe that Respondent violated the ADA by failing to engage in the interactive process with Charging Party and instead discharging her.

Upon finding reasonable cause that unlawful employment practices have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Conciliation is Respondent's opportunity to voluntarily remedy the unlawful employment practices found to have occurred. Ultimately, any conciliation agreement must be acceptable to the Commission. Forthcoming under separate cover is a proposed conciliation agreement designed to remedy the unlawful employment practices found to have occurred in this Letter of Determination. Respondent is invited to respond to this proposal within 21 days of receipt.

If Respondent fails to engage in conciliation, or if the Commission determines, in its sole discretion, that conciliation has failed, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission

9-30-16
Date

Spencer H. Lewis
District Director

cc: Chris Donato (for Respondent)
    Rhonda Greenblatt (for Charging Party)



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Philadelphia District Office

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia Status Line: (866) 408-8075
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2606, 2632, 2848 & 2604
Website: www.eeoc.gov

Frances Devico
8 Lomurno Lane
Cape May Court House, NJ 08210

Charging Party

v.

Charge Number: 530-2015-01207

GENESIS HEALTH CARE, LLC
101 E State Street
Kennett Square, PA 19348

Respondent

### Notice of Conciliation Failure

The Equal Employment Opportunity Commission (EEOC) has determined that its efforts to conciliate this charge filed under the Americans with Disabilities Act of 1990, as amended ("ADA"), have been unsuccessful. Therefore, the case has been forwarded to our Legal Unit for possible litigation. You will be informed of the EEOC's decision in this matter.

If the EEOC decides to bring a civil action, on behalf of the Charging Party under the ADA, the Charging Party will lose her right to private suit rights as soon as the EEOC files suit, unless she has already filed a private lawsuit against the Respondent.

If the EEOC decides that it will not bring a civil action based on this charge, the Charging Party will be issued a Notice of Right to Sue, which will entitle her to sue the Respondent on her own behalf.

It is requested that where suit is filed, that the Charging Party notify EEOC at the above address by letter and copy of the complaint.

On Behalf of the Commission,

6/29/17
Date

Spencer H. Lewis, Jr.
District Director

cc:   Kristine Grady Derewicz, for Respondent
      Rhonda E. Greenblatt, Esq., for Charging Party

"B"

EEOC Form 161-A (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Frances S. Devico<br>8 Lomurno Lane<br>Cape May Court House, NJ 08210 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
|---|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2015-01207** | **Legal Unit** | **(215) 440-2828** |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
### *(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

6|29|17

*(Date Mailed)*

cc:   Kristine Grady Derewicz
LITTLER MENDELSON, PC
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

Rhonda E. Greenblatt, Esq.
LAW OFFICES OF RHONDA E. GREENBLATT
Central Park East
222 New Road, Suite 302
Linwood, NJ 08221

Enclosure with EEOC
Form 161-A (11/16)

<strong>INFORMATION RELATED TO FILING SUIT<br>
UNDER THE LAWS ENFORCED BY THE EEOC</strong>

<em>(This information relates to filing suit in Federal or State court <u>under Federal law</u>.<br>
If you also plan to sue claiming violations of State law, please be aware that time limits and other<br>
provisions of State law may be shorter or more limited than those described below.)</em>

**PRIVATE SUIT RIGHTS  --  Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

<em><strong>IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.</strong></em>

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment may be substantially limiting even though it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.